UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | |
|---|---|
| BENJAMIN LEON BLUE, TDCJ # 1176709, § § § § Plaintiff, § VS. § § TEXAS DEPARTMENT OF CRIMINAL § JUSTICE, *et al*, § § Defendants. § | CIVIL ACTION NO. 3:17-CV-0042 |

## MEMORANDUM OPINION AND ORDER

Plaintiff Benjamin Leon Blue, an inmate in the Texas Department of Criminal Justice–Correctional Institutions Division ("TDCJ"), brings this civil rights suit alleging that he was denied adequate medical care. On February 6, 2018, the Attorney General submitted a *Martinez* report (Dkt. 42).[1] The Court construed the *Martinez* report as a summary judgment motion and ordered Plaintiff to respond by April 15, 2018, later extending the deadline to May 21, 2018 (Dkt. 44, Dkt. 46). To date, Plaintiff has not filed a response, and the time to do so has expired. However, Plaintiff filed a request for production of additional documents (Dkt. 47), to which the Attorney General responded (Dkt. 48) and Plaintiff replied (Dkt. 49). The motions now are ripe for decision. Having reviewed the pleadings, the *Martinez* report, the parties' briefing, the applicable law, and

---

[1] An administrative report submitted by state officials pursuant to *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) (a "*Martinez* report"), is a tool to assist courts in making a determination of frivolity under 28 U.S.C. § 1915. *See Norton v. Dimazana*, 122 F.3d 286, 292-93 (5th Cir. 1997); *see also Cay v. Estelle*, 789 F.2d 318, 323 & n.4 (5th Cir. 1986) (discussing the utility of a *Martinez* report).

all matters of record, the Court concludes that the motion for summary judgment should be **GRANTED** for Defendants and that Plaintiff's claims must be **DISMISSED** for the reasons that follow.

I. **BACKGROUND**

On or about June 25, 2015, Plaintiff Blue was diagnosed at Hospital Galveston with sarcoidosis, an inflammatory disease that can affect multiple organs. He alleges that, at that time, he "became aware" that Defendants "acted with deliberate indifference to my health and safety" (Dkt. 36, at 4).[2] He also alleges that Defendants were deliberately indifferent "in regards to the diagnoses and treatment of sarcoidosis while conscious of internal damages and a lingering death" (*id.*). He claims that "[i]nadequate medical care during my incarceration has allowed the disease to progress into a life threatening stage" (*id.*). He seeks $300,000 in nominal, compensatory, and punitive damages (*id.*).

Plaintiff brings suit against Brad Livingston, the former director the Texas Department of Criminal Justice, who has been succeeded by Bryan Collier. He also sues four physicians from the University of Texas Medical Branch ("UTMB"): Aaron Moharty; Rafic Berbarie; Philip Keiser; and Chizoba Ngwube (*id.* at 3). He does not make any allegations about the personal involvement of any of the five defendants and provides no factual allegations explaining when or how they acted with "deliberate indifference."

---

[2] Throughout this Memorandum, the Court's citations to specific pages in the record refer to the pagination of docket entries on the Court's electronic case filing ("ECF") system.

The Attorney General's *Martinez* report attaches Plaintiff's medical records from TDCJ (Exhibit A); his medical records from UTMB (Exhibit B); his medication compliance records from TDCJ (Exhibit C); and an affidavit from Steven Bowers, M.D., legal coordinator for UTMB Correctional Managed Care (Exhibit D).

The medical records show that Blue was hospitalized at Hospital Galveston from June 1, 2015, through July 8, 2015, after an assault by another inmate caused a subdural hemorrhage (Dkt. 42-4, at 11-14). During that hospitalization, medical testing incidentally discovered masses and, upon further testing, Blue was diagnosed with sarcoidosis (*id.*) Dr. Bowers, based on his review of Blue's medical records, summarized the pertinent portions as follows:

> Mr. Blue had a biopsy performed on a skin lesion on June 25, 2015 at Hospital Galveston. The non-caseating granulomas were diagnosed as sarcoidosis. Mr. Blue was prescribed Prednisone 40 mg BID. He was to take Prednisone for 3 months as per the recommendation from pulmonology. The end date was scheduled for September 28, 2015.
>
> Mr. Blue was seen on July 24, 2015 in the Gastroenterology Clinic at Hospital Galveston to be evaluated for a liver biopsy. Diagnostic imaging was performed and showed imaging that was consistent with hepatic sarcoidosis. At this time he was already receiving treatment for sarcoidosis so a further biopsy of the liver would not change the treatment plan. The plan was for him to continue the treatment he was on and follow up with rheumatology for management of sarcoidosis.
>
> Mr. Blue was seen on September 30, 2015 for his scheduled follow-up with Rheumatology at Hospital Galveston. Mr. Blue was to continue taking Prednisone for treatment and return to the clinic in the next two months.
>
> Mr. Blue was seen by Rheumatology at Hospital Galveston on November 25, 2015. During this visit Mr. Blue reported that he was doing well on the Prednisone and denied any nausea, vomiting, coughing or shortness of breath. Because Mr. Blue had multi system sarcoidosis and would require

steroids for a long time, he was started on Imuran 50mg—a steroid sparing agent.

During his March 16[,] 2016 visit to the Rheumatology Clinic, Mr. Blue's condition was reported by him to be stable with no new or worsening symptoms. The plan was for him to continue taking Prednisone and Imuran long term for his sarcoidosis.

On November 30, 2016 Mr. Blue was seen for his routine follow-up with Rheumatology. He reported to be doing well on Imuran 50 mg and Prednisone 5 mg. Mr. Blue denied any new skin lesions. The plan was then to reduce Mr. Blue's Prednisone dosage from daily to every other day and continue Imuran at 50 [mg] daily.

During his February 22, 2017 follow-up visit, it was decided to increase Mr. Blue's dosage of Prednisone from 5 mg to 10mg as maintenance dosage for his liver sarcoidosis. Additionally, as per the recommendation from Gastroenterology, Mr. Blue was switched from Imuran to Methotrexate (immunosuppressant) for hepatic sarcoidosis.

As of December 13, 2017 Mr. Blue's sarcoidosis was "stable" and he had no complaints. He is continuing with Prednisone and methotrexate.

(*Id.* at 3-4) (footnotes omitted). Dr. Bowers' affidavit attached pertinent medical records supporting his summary.

The Court ordered Plaintiff to respond to the summary judgment motion by May 21, 2018 (Dkt. 46). In the same order, the Court denied a request from Plaintiff for production of records pertaining to a period before his diagnosis. Plaintiff did not file a summary judgment response, but filed an additional request for production of documents (Dkt. 47).

## II. STANDARDS OF REVIEW

### A. The PLRA and *Pro Se* Pleadings

Because the plaintiff is an inmate proceeding *in forma pauperis*, the Court is required by the Prison Litigation Reform Act ("PLRA") to scrutinize the claims and dismiss the complaint at any time, in whole or in part, if it determines that the complaint "is frivolous, malicious, or fails to state a claim upon which relief may be granted," or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. §§ 1915A(b), 1915(e)(2)(B); *see also* 42 U.S.C. § 1997e(c) (providing that the court "shall on its own motion or on the motion of a party dismiss an action" if it is satisfied that the complaint is "frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant who is immune from such relief"). A claim is frivolous if it lacks any arguable basis in law or fact. *Samford v. Dretke*, 562 F.3d 674, 678 (5th Cir. 2009). "A complaint lacks an arguable basis in law if it is based on an indisputably meritless legal theory. . . . A complaint lacks an arguable basis in fact if, after providing the plaintiff the opportunity to present additional facts when necessary, the facts alleged are clearly baseless." *Rogers v. Boatright*, 709 F.3d 403, 407 (5th Cir. 2013) (internal quotation marks and citation omitted).

In reviewing the pleadings, the Court is mindful of the fact that Plaintiff proceeds *pro se*. Complaints filed by *pro se* litigants are entitled to a liberal construction and, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). Even under this lenient standard a *pro se* plaintiff

must allege more than "'labels and conclusions' or a 'formulaic recitation of the elements of a cause of action.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

B. **Summary Judgment—Rule 56**

The Court has construed the *Martinez* report filed by the Attorney General's Office as a motion for summary judgment. Rule 56 of the Federal Rules of Civil Procedure mandates the entry of summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); see *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Curtis v. Anthony,* 710 F.3d 587, 594 (5th Cir. 2013). Once the movant presents a properly supported motion for summary judgment, the burden shifts to the nonmovant to show with significant probative evidence the existence of a genuine issue of material fact. *Hamilton v. Segue Software Inc.*, 232 F.3d 473, 477 (5th Cir. 2000). "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Id*. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Id*.

In deciding a summary judgment motion, the reviewing court must "construe all facts and inferences in the light most favorable to the nonmoving party." *Dillon v. Rogers*, 596 F.3d 260, 266 (5th Cir. 2010) (internal citation and quotation marks omitted). However, the non-movant cannot avoid summary judgment simply by

presenting "conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation." *Jones v. Lowndes Cnty.*, 678 F.3d 344, 348 (5th Cir. 2012) (internal citation, alteration and quotation marks omitted); *see Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). Likewise, Rule 56 does not impose upon the Court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment. Evidence not referred to in the response to the motion for summary judgment is not properly before the Court, even if it exists in the summary judgment record. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003).

Although Plaintiff is proceeding *pro se*, "the notice afforded by the Rules of Civil Procedure and the local rules" is considered "sufficient" to advise a *pro se* party of his burden in opposing a summary judgment motion. *Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir. 1992). Even a *pro se* plaintiff must specifically refer to evidence in the summary judgment record in order to place that evidence properly before the court. *Outley v. Luke & Assocs., Inc.*, 840 F.3d 212, 217 & n.9 (5th Cir. 2016); *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) ("Despite our general willingness to construe pro se filings liberally, we still require pro se parties to fundamentally abide by the rules that govern the federal courts. Pro se litigants must properly . . . present summary judgment evidence") (internal citation and quotation marks omitted).

## III. DISCUSSION

### A. Official Immunity

UTMB and TDCJ are state agencies. TEX. EDUC. CODE § 65.01 *et seq.*; TEX. GOV'T CODE § 493.001 *et seq.* A claim against an official employed by TDCJ or UTMB in his or her official capacity is a claim against the agency, and thus a claim against the State of Texas. *See Mayfield v. Tex. Dep't of Crim. Justice*, 529 F.3d 599, 604 (5th Cir. 2008). Because the Eleventh Amendment protects the states' sovereign immunity, federal courts lack jurisdiction over suits against a state for money damages unless the state has waived its immunity or Congress has clearly abrogated that immunity. *NiGen Biotech, L.L.C., v. Paxton*, 804 F.3d 389, 393-94 (5th Cir. 2015); *Moore v. La. Bd. of Elem. and Secondary Educ.*, 743 F.3d 959, 963 (5th Cir. 2014). Texas has not waived its Eleventh Amendment immunity, and Congress did not abrogate that immunity when enacting Section 1983. *NiGen*, 804 F.3d at 394.

To the extent Plaintiff sues Defendants in their official capacity as state employees, Defendants are entitled to immunity under the Eleventh Amendment from claims for monetary damages. Accordingly, Defendants are entitled to summary judgment on this issue.

### B. Eighth Amendment Claim

Plaintiff alleges that Defendants violated his right to adequate medical care. Section 1983, 42 U.S.C. § 1983, provides a vehicle for a claim against a person "acting under color of state law," such as a state prison official, for a constitutional violation. *See Pratt v. Harris Cty., Tex.*, 822 F.3d 174, 180 (5th Cir. 2016); *Townsend v. Moya*, 291

F.3d 859, 861 (5th Cir. 2002). Because Plaintiff was, at all relevant times, a convicted felon in state prison, his claims regarding denial of adequate medical care are governed by the Eighth Amendment prohibition against "cruel and unusual" conditions of confinement. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981); *see Helling v. McKinney*, 509 U.S. 25, 33 (1993) (the Eighth Amendment "requires that inmates be furnished with the basic human needs, one of which is 'reasonable safety'").

To prevail on his Eighth Amendment claim, Plaintiff must demonstrate that Defendants exhibited "deliberate indifference" to his "serious medical needs, constituting an unnecessary and wanton infliction of pain." *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006) (internal citations and quotation marks omitted); *see Estelle v. Gamble*, 429 U.S. 97, 104 (1976). The Eighth Amendment standard has both an objective and subjective component. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994). First, the prisoner must show "objective exposure to a substantial risk of serious harm." *Gobert v. Caldwell*, 463 F.3d 339, 345 (5th Cir. 2006). Second, he must show that the defendant acted, or failed to act, with deliberate indifference to the risk. *Id*. at 345-46. Deliberate indifference is an "extremely high standard." *Domino v. Tex. Dep't of Crim. Justice*, 239 F.3d 752, 756 (5th Cir. 2001). It requires "more than an allegation of mere negligence, but less than an allegation of purpose or knowledge." *Hinojosa v. Livingston*, 807 F.3d 657, 665 (5th Cir. 2015). "The mere delay of medical care can also constitute an Eighth Amendment violation but only 'if there has been deliberate indifference [that] results in substantial harm.'" *Easter*, 467 F.3d at 463 (quoting *Mendoza v. Lynaugh*, 989 F.2d 191, 193 (5th Cir. 1993)).

In this case, the medical records attached to Dr. Bowers' affidavit show that Blue received regular medical care at Hospital Galveston from the time that his sarcoidosis was diagnosed in June 2015, including follow up care in the gastroenterology and rheumatology clinics from 2015 through 2017 (Dkt. 42-4, at 3-4 (citing attached medical records)). The records further demonstrate that Blue's condition was observed and managed successfully through medication and other treatments. *See id*. (records show adjustment of prescription medication and dosage to manage condition). By March 2016, Blue reported to his physicians that his condition was stable, "with no new or worsening symptoms" (*id*.). He was continued on a maintenance dosage of his medication in 2017. On November 30, 2016, he denied any new skin lesions. On December 13, 2017, he was stable with no complaints, although he reported skin lesions (*id*.). His pleadings (Dkt. 36) were signed on March 24, 2017.

Because the medical evidence in the record demonstrates that Blue received extensive medical care for his sarcoidosis, his claim that he was denied medical treatment in violation of the Eighth Amendment is without merit. *See Varnardo v. Lynaugh*, 920 F.2d 320 (5th Cir. 1991); *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir. 1990) (upholding the dismissal of a deliberate indifference claim where extensive medical records documented that the prisoner was not denied medical attention). Blue may disagree with the level of care that he was provided, but an inmate's mere disagreement with medical treatment does not constitute deliberate indifference absent exceptional circumstances. *See Estelle*, 429 U.S. at 107 (explaining that the decision whether to provide a particular type of treatment "is a classic example of a matter for medical

judgment"); *Rogers*, 709 F.3d at 410. In this case, Blue's condition stabilized and his medical records reflect that he reported no complaints at appointments in 2016 and 2017.

To the extent Plaintiff alleges that one of the defendants failed to make a prompt diagnosis of his sarcoidosis, he provides no specific factual allegations sufficient to state a claim for relief, either as to his medical condition or as to the specific involvement of any of the five Defendants. Moreover, a "delay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that *results in substantial harm*." See *Rogers*, 709 F.3d at 410 (emphasis in original) (internal citation, quotation marks, and alteration omitted). Blue does not show that he suffered substantial harm as a result of any alleged delay and, to the contrary, the medical records show that his condition has been successfully managed. Even if Plaintiff could successfully state a claim for negligence or medical malpractice, such a claim would not suffice under the deliberate indifference standard. *See Hinojosa*, 807 F.3d at 665; *Gibbs v. Grimmette*, 254 F.3d 545, 549 (5th Cir. 2001); *Stewart v. Murphy*, 174 F.3d 530, 534 (5th Cir. 1999).[3]

---

[3] After the Attorney General filed a *Martinez* report and provided Blue with over 7,000 pages of medical records, Blue filed a request for production of additional documents (Dkt. 47). Blue makes broad requests for documents predating his diagnosis, including "any and all medical records" from as early as 2011 from the LeBlanc, Gist, Jester III, and Wynne Units. He also requests records from a "local hospital" where he received "a biopsy of his right ear" in 2013. Plaintiff argues that the requested records will show "medical negligence, medical malpractice, inadequate medical care and systemic deficiencies regarding medical care by the defendants, that has made unnecessary suffering inevitable for the severe chronically and terminally ill disable[d] plaintiff" (Dkt. 47, at 1). Respondent opposes the request as overly broad, unduly burdensome, and not reasonably limited in time or scope, among other grounds (Dkt. 48).

Plaintiff makes no showing that his requests are relevant to his claims against the five named Defendants in this lawsuit. Moreover, as stated above, even a showing of negligence or medical malpractice would be insufficient for an Eighth Amendment violation. *See Hinojosa*,

Finally, to the extent Blue alleges claims against Livingston in his supervisory capacity, he also fails to state a claim upon which relief can be granted. It is well established that a supervisory official is not liable under Section 1983 for the actions of subordinates on any theory of vicarious liability. *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691-95 (1978) (holding that supervisory officials cannot be held vicariously liable for their subordinates' actions under Section 1983); *see Iqbal*, 556 U.S. at 677 ("'[S]upervisory liability' is a misnomer. Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct"); *Alton v. Texas A&M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999) ("Supervisory officers . . . cannot be held liable under § 1983 for the actions of subordinates . . . on any theory of vicarious liability."). Supervisory officials can be held liable under Section 1983 only if the plaintiff demonstrates (1) the supervisor's personal involvement in the constitutional deprivation, or (2) a sufficient causal connection between the supervisor's wrongful conduct and the deprivation. *See Evett v. Deep East Tex. Narcotics Trafficking Task Force*, 330 F.3d 681, 689 (5th Cir. 2003). Blue has made neither showing in this case.

Viewing all facts in the light most favorable to Blue, he has failed to demonstrate a genuine issue of material fact as to his Eighth Amendment claim. Summary judgment is granted for Defendants.

### IV. <u>CONCLUSION</u>

For the reasons stated above the Court **ORDERS** that:

---

807 F.3d at 665. Plaintiff's request for production of additional documents therefore will be **denied**.

1. Summary judgment is **GRANTED** for Defendants. Plaintiff's claims are **DISMISSED with prejudice** pursuant to Rule 56 and 28 U.S.C. §§ 1915(e)(2)(B).

2. Plaintiff's motion for production of additional documents (Dkt. 47) is **DENIED.**

3. All other pending motions, if any, are **DENIED as moot**.

A separate final judgment will issue.

The Clerk of this Court shall send a copy of this order to the parties and to *amicus curiae*.

SIGNED at Galveston, Texas, this 25th day of September, 2018.

*[signature]*
George C. Hanks Jr.
United States District Judge